IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-00100-FL

**Tina Cahoon Jones,**

Plaintiff,

v.

**Nancy A. Berryhill**, Acting
Commissioner of Social Security,[1]

Defendant.

**Memorandum & Recommendation**

Plaintiff Tina Cahoon Jones instituted this action on June 9, 2016, to challenge the denial of her application for social security income. Jones claims that the Administrative Law Judge ("ALJ") Larry A. Miller erred in (1) finding that she had the residual functional capacity ("RFC") to perform a reduced range of light work, (2) evaluating the medical opinion evidence, and (3) evaluating her mental impairments under Listings 12.04 and 12.06. Both Jones and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 21.

After reviewing the parties' arguments, the court has determined that ALJ Miller reached the appropriate decision. Substantial evidence supports ALJ Miller's conclusion that Jones has the RFC to perform a reduced range of light work. Additionally, Jones has failed to demonstrate any error in ALJ Miller's consideration of the medical opinion evidence. Finally, ALJ Miller did not err in finding that Jones's impairments did not meet or equal the criteria for Listings 12.04 or

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

12.06. Therefore, the undersigned magistrate judge recommends that the court deny Jones's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

## I.    Background

On September 20, 2013, Jones protectively filed applications for disability benefits and supplemental security income.[3] In both applications, Jones alleged a disability that began on September 7, 2013. After her claims were denied at the initial level and upon reconsideration, Jones appeared by video-conference before ALJ Miller for a hearing to determine whether she was entitled to benefits. ALJ Miller determined Jones was not entitled to benefits because she was not disabled.  Tr. at 19–31.

ALJ Miller found that Jones had the following severe impairments: cervical degenerative disc disease and spondylosis, obesity, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.* at 22. ALJ Miller found that Jones's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Miller then determined that Jones had the RFC to perform light work, with additional limitations. *Id*. at 24. She can frequently perform tasks requiring fingering or handling. *Id*. Jones can occasionally balance on narrow, slippery, or moving surfaces, climb ladders and stairs, stoop, crouch, kneel, and crawl. *Id*.

She is limited to simple, routine, repetitive tasks (i.e., she can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). *Id.* Jones

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

[3] Also at issue is whether Jones qualifies for disabled widow's benefits. The prescribed period began on October 21, 2008, the date the wage earner died. Jones must establish that she has a disability which began before the prescribed period ended, which in this case is October 31, 2015.

is able to concentrate for two-hour increments with normal rest breaks (i.e., 15, 30, 15 minutes). *Id*. Jones can occasionally deal with the public. *Id*. Finally, she is unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations. *Id*.

ALJ Miller concluded that Jones had no past relevant work. *Id*. at 30. But, considering her age, education, work experience, and RFC, ALJ Miller found that there were jobs that existed in significant numbers in the national economy that Jones was capable of performing. *Id*. at 30–31. These include: merchandise marker, routing clerk, and housekeeper. *Id*. at 30. Thus, ALJ Miller found that Jones was not disabled. *Id*. at 31.

After unsuccessfully seeking review by the Appeals Council, Jones commenced this action on June 9, 2016. D.E. 5.

## II.    Analysis

### A.    Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.    Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis

requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

In August 2012, prior to her alleged disability onset date, Jones suffered a work-related injury causing her neck and back pain. Tr. at 392, 394. Providers cleared Jones to return to light duty work with limitations on grasping and pulling as well as a restriction that she lift no more than ten pounds. *Id*. at 395. In November 2012, Carolina East Medical Associates treated Jones for sciatica, lumbago, and arm pain secondary to a work injury. *Id*. at 391–96. Treatment notes reflect that Jones had difficulty reaching overhead, walking, and rising from a seated position. *Id.*

Between January 2013 and November 2014, Pungo Family Medicine treated Jones for sciatica, ADHD, radiculopathy, bipolar disorder, tingling and numbness in her hands, and chronic neck and back pain. *Id.* at 533–58. Treatment records consistently reflect normal gait,

normal range of motion, and normal strength. *Id*. at 529, 544, 549, 557. Providers prescribed medications for her neck and back pain. *Id*. at 537–38. In August 2013, Jones sought treatment in the Emergency Department at Vidant Pungo Hospital for exacerbation of her chronic neck and back pain. *Id*. at 448–56. Treatment records reflect Jones displayed decreased range of motion and very stiff upper body movements. *Id*. For the next month, Jones received treatment for her chronic neck and back pain, lymphadenopathy, and radiculopathy at Vidant Family Medicine Belhaven. *Id*. at 418–24.

Dr. Christopher E. Lacroix performed a consultative physical examination on November 23, 2013. *Id*. at 426–28. Dr. Lacroix noted decreased range of motion in her neck and back but normal gait. *Id*. He opined that Jones would be limited to standing or walking two hours in a workday and that she needed frequent position changes. *Id*. Dr. Lacroix further opined that Jones is unable to carry even ten pounds, that she has decreased fine and gross manipulation, and that she is limited to frequent postural maneuvers. *Id*.

Jones visited the Emergency Department at Vidant Pungo Hospital for left ankle, knee, and foot pain following a fall in December 2013. *Id.* at 429–36. Records reflect she had a decreased range of motion in her left knee and ankle. *Id*.

Jones sought treatment from the Emergency Department at Vidant Beaufort Hospital in July 2014, for neck and thigh pain after a motor vehicle collision. *Id*. at 507–16. Although she had normal range of motion in her neck, a CT scan of her cervical spine revealed scattered, severe facet degenerative disease and moderate cervical spondylosis. *Id*. Providers diagnosed Jones with cervical strain, for which they prescribed medications. *Id*.

Jones returned to Vidant Beaufort Hospital's Emergency Department in February 2015 for neck and head pain secondary to another motor vehicle collision. *Id*. at 499–506. An MRI of

her cervical spine showed degenerative disc disease, facet hypertrophy, spinal stenosis, and osteophytes. *Id.* Jones displayed no tenderness in her neck or back and she had normal range of motion. *Id.* at 501–02. Imaging tests showed mild to moderate degenerative changes in her cervical spine, but no acute injury. *Id*. at 504–05. Providers diagnosed Jones with a cervical sprain. *Id*. at 503–04, 507. They stapled a scalp laceration and administered an injection. *Id*.

With respect to Jones's mental impairments, from 2009 through 2012, she sought treatment at Vidant Beaufort Health for her depression, bipolar disorder, and ADHD. *Id.* at 366–89. Jones's reported symptoms included sleep and appetite disturbances, difficulty concentrating, decreased energy, paranoid thinking, anxiety, racing thoughts, mood swings, and manic episodes. *Id.*

Dr. Richard J. Bing performed a consultative psychological examination of Jones in January 2014. *Id*. at 458–62. Dr. Bing noted that she exhibited pressured speech and racing thoughts. *Id*. Jones reported that her mania has caused numerous problems in past employment, including termination, due to her poor interpersonal functioning. *Id*. Dr. Bing diagnosed bipolar disorder and ADHD and assessed a Global Assessment of Functioning ("GAF") score of 50. *Id*. Dr. Bing opined Jones may have difficulties sustaining attention to perform simple repetitive tasks, that she has a history of interpersonal difficulties, and that she may have difficulty tolerating the stress and pressures associated with day-to-day work activity. *Id*. at 461–62. He also concluded that Jones may not be able to manage her benefits. *Id*. at 462.

From June 2014 through December 2014, Jones again sought treatment at Vidant Behavioral Health for bipolar disorder. *Id*. at 463–78, 484–98. She reported sleep and appetite disturbances, anhedonia, decreased energy, feelings of guilt and worthlessness, and concentration problems. *Id*. A July 2014 mental status exam yielded normal results. *Id*. at 463–66.

Jones continued treatment at Vidant throughout 2015 for bipolar disorder, anxiety, and ADHD as well as medication management. *Id*. at 479–83, 517–20, 525–31. Records reflect reports of depression, irritability, sleep disturbances, and manic episodes. *Id*. Treatment notes during this period also show that she was doing "okay," had up days and down days, got mildly depressed at times, experienced mild irritability, and had intact memory with fair to reasonable attention and concentration. *Id*.

In September 2015, Jones received treatment at Dream Provider Care Services for her bipolar disorder. *Id*. at 521–24. She again reported anhedonia, sleep and appetite disturbances, manic episodes with increased energy, racing thoughts, distractibility, euphoria, and overconfidence. *Id*. Providers diagnosed her with bipolar disorder and recommended therapy. *Id*. at 524.

### D.    Medical Opinion Evidence

Jones maintains that ALJ Miller erred in giving significant weight to the assessments of state agency reviewers but less weight to the medical opinions of Drs. Lacroix and Bing. She also argues that ALJ Miller failed to discuss all GAF scores. The Commissioner contends that ALJ Miller's evaluation of the medical opinion evidence was proper. The court finds no error in the weight ALJ Miller assigned to these opinions

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the

applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id*. § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id*. § 404.1527(c)(4).

According to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig*, 76 F.3d at 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1).

### a. Dr. Lacroix

Dr. Lacroix opined that Jones would be limited to standing or walking two hours in a workday and that she needs frequent position changes. Tr. at 426–28. He further determined that Jones is limited to carrying less than ten pounds, that she has decreased fine and gross manipulation, and that she is limited to frequent postural maneuvers. *Id*.

ALJ Miller assigned little weight to this assessment, concluding that he was a one-time examiner and did not have the benefit of imaging studies to review. *Id*. at 28. ALJ Miller also found that Dr. Lacroix's conclusions overstated Jones's limitation when they were compared to his exam findings. *Id.*

Despite Jones's contention to the contrary, ALJ Miller explained the reasons he afforded less weight to this opinion. Jones asserts that as a consultative examiner for the SSA, Dr. Lacroix is highly qualified to offer an opinion of her functional abilities. However, Dr. Lacroix's credential are not disputed. Nonetheless, ALJ Miller found his opinion flawed because it lacked support from his own exam findings and the overall record. This is a proper basis to assign less weight to his opinion. *See Craig*, 76 F.3d at 590 (4th Cir. 1996); 20 C.F.R. § 404.1527(c)(2).

Moreover, ALJ Miller's assignment of more weight to the opinions state agency reviewers over the consultative examiners is not flawed merely because the state agency reviewers did not examine Jones. Tr. at 29. The opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (ALJs may rely on the opinions of non-examining physicians when such opinions find consistency with the whole of the record).

ALJ Miller observed that these reviewers found Jones could perform light work with additional postural and manipulative limitations, as well as mental restrictions that limited her to

simple, routine, repetitive tasks in a stable work environment with occasional public contact. Tr. at 29. In assigning these evaluations significant weight, ALJ Miller noted that opinions were consistent with the record, including Jones's treatment history, exam findings, and treatment recommendations. *Id*. As he properly explained his consideration of these opinions, Jones's argument lacks merit.

### b.  Dr. Bing

As noted above, Dr. Bing concluded that Jones may have difficulties sustaining attention to perform simple repetitive tasks, had a history of interpersonal difficulties, and may have difficulty tolerating the stress and pressures associated with day-to-day work activity. *Id*. at 461–62. He assessed a GAF score of 50. *Id*.

ALJ Miller afforded moderate weight to Dr. Bing's assessment, noting that he was a one-time examiner and it was unclear whether Jones had been compliant with her medication at the time of his evaluation. *Id*. at 28–29. ALJ Miller also observed that Dr. Bing's conclusions appeared to be based more on Jones's subjective statements than his own clinical findings. *Id*. at 29.

As with Dr. Lacroix's opinion, ALJ Miller properly supported his reasons to afford only moderate weight to this examiner. His reasons to assign less than controlling weight or significant weight to Dr. Bing's findings are not improper. For the same reasons ALJ Miller's assessment of Dr. Lacroix's opinion withstands scrutiny, the undersigned also find no error in his consideration of Dr. Bing's opinion.

### c.  GAF scores

Jones also argues that ALJ Miller erred in citing one GAF score but not discussing other, lower scores indicating more serious symptoms. She notes she was most recently assigned a GAF score of 50, indicative of serious symptoms, but that she also had a score as low as 40,

which can suggest some impairment in reality testing or communication or major impairment in several areas.

The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). The SSA has stated that GAF scores "[do] not have a direct correlation to the severity requirements in [the social security] mental disorders listings." *Wiggins v. Astrue*, No. 5:11–CV–85–FL, 2012 WL 1016096, at *8 (E.D.N.C. Feb. 2, 2012) (unpublished) (quotations and citations omitted). Moreover, GAF scores themselves are not necessarily indicative of a claimant's mental disability. *See Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations.); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (a GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."); *Leovao v. Astrue*, No. 2:11-cv-54, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012) (a GAF score is intended to be used to make treatment decisions) (citing *Wilkins v. Barnhart*, 69 F. App'x. 775, 780 (7th Cir. 2003)); *Fowler v. Astrue*, No, 1:10-cv-273, 2011 WL 5974279, at *3 (W.D.N.C. Nov. 29, 2011) (a GAF score is only a "snapshot of functioning at any given moment."); *Melgarejo v. Astrue*, No. 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) ("[A] GAF score is not determinative of whether a person is disabled . . . [and] [t]he Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings."). "[T]he failure to reference a [GAF] score is not,

standing alone, sufficient ground to reverse a disability determination." *Wiggins,* 2012 WL 1016096, at *8 (quotations and citations omitted).

Given the limited value of GAF scores in the disability determination, the undersigned cannot find that ALJ Miller's failure to discuss Jones's previous GAF score of 40 constitutes error. He addressed Dr. Bing's GAF score of 50 as part of that examiner's assessment of Jones's mental abilities. Tr. at 28. Moreover, the lower GAF score of 40 to which Jones's cites was offered in July 2009, over four years before her alleged disability onset date. It relevance to her present claim is of limited value at best. Accordingly, Jones's has not shown error by ALJ Miller on this issue.

As Jones's present argument amounts to disagreement, not error, over the ALJ's evaluation of the medical opinion evidence, her claim on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

### E.    Residual Functional Capacity

Jones contends that ALJ Miller erred in finding that she had the RFC to perform a reduced range of light work. She argues that the RFC conflicts with the findings of two consultative examiners. Had the RFC determination reflected a sedentary exertion level, the Medical-Vocational Guidelines would direct a finding of "disabled" pursuant to Rule 201.12. The Commissioner asserts, and the court concludes, that substantial evidence supports ALJ Miller's RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996

WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id*. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

As noted above, ALJ Miller determined that Jones was capable of performing light work with additional manipulative, environmental, postural, and mental limitations. Tr. at 24. Jones contends that further restrictions are warranted based on her testimony. She alleges that her pain and mental health symptoms demonstrate her inability to work. She testified that she must frequently change position due to back pain, leg pain, and foot swelling; she is unable to fully turn her head due to neck pain; and she cannot lift or carry five pounds because of her hand numbness. Jones stated that her pain and headaches cause her to remain in bed ten days per month. She further asserts that her bipolar symptoms have worsened. Jones maintains that these symptoms are well-documented in the medical record.

ALJ Miller recognized Jones's pain symptoms and psychological impairments and he credited the well-supported limitation arising therefrom. The RFC adopted physical limitations that found support in the record. It limits Jones to light work with only frequent manipulations and occasional work that would require her to balance on narrow, slippery, or moving surfaces, climb ladders and stairs, stoop, crouch, kneel, and crawl. *Id*.

As for her physical impairments, her conservative treatment coupled with a lack of significant clinical findings weighs against finding that Jones is more limited than her RFC indicates. Although Jones alleged severe neck and back pain, several treatment records reflect normal gait, range of motion, strength, and sensation. *Id.* at 539, 544, 549, 557. While an August 2013 treatment note stated that Jones had stiff upper body movement and decreased range of motion in her neck, this followed her own report that she had been power-washing on a ladder. *Id*. at 450–51. Imaging studied revealed spondylosis with mild to moderate degenerative disc disease. *Id*. at 504–05, 510–11. Jones used a cane, but ALJ Miller noted a lack of evidence that the device was medically necessary. *Id*. at 27.

ALJ Miller also noted that Jones's treatment for these issues was conservative. *Id*. at 26. Additionally, she sought treatment in November 2012 and thereafter did not seek further medical care for her neck and back until August 2013. *Id*. at 25. She again did not seek additional treatment for her neck and back conditions after February 2015. *Id*. at 26.

ALJ Miller also remarked that Jones stopped working as a personal care aide not because of an inability to work but because her client had died. *Id.* at 28. Jones had been a house sitter for two years, which required her to care for pets, do laundry, and clean the home. *Id*. Jones also reported that she cleaned her church for free and ran errands for another person. *Id*. These activities support a finding that Jones is not as limited as she alleges and that she is capable of performing some work activity.

The RFC determination also sufficiently reflects Jones's well-supported mental limitations. The RFC accounted for Jones's mental limitations by restricting her to simple, routine, repetitive tasks, limiting her concentration and attention to two-hour increments,

allowing her occasionally interactions with the public, and eliminating jobs that require complex decision making, constant change, or dealing with crisis situations. *Id*. at 24.

ALJ Miller noted Jones's long-term history of bipolar disorder and ADHD. *Id*. at 27. He also noted that her symptoms and treatment compliance varied but Jones had not been admitted to a hospital or sought emergency care for these conditions. *Id*. Jones stated she took Lithium, but the record did not disclose a prescription for that medication. *Id*.

ALJ Miller noted Jones's mental health treatment was not regular and consistent. *Id*. She stopped seeing her mental health provider in June 2012 and did not seek further mental health treatment for two years. *Id.* Providers recommended that Jones participate in counseling but, after one follow-up visit, she did not return for further therapy sessions. *Id*. While she experienced some ongoing issues, Jones reported general improvement in her mental health symptoms. *Id*. In sum, the evidence partially, but not fully, supports a finding that Jones's is restricted in her mental functioning abilities. The RFC properly accounts for these limitations.

Jones also challenges whether the RFC's restriction to simple, routine tasks adequately reflects her moderate limitations in concentration, persistence, or pace. In *Mascio v. Colvin*, the Fourth Circuit found that a limitation to simple, routine tasks or unskilled work may fail to account for a moderate limitation in concentration, persistence or pace. 780 F.3d 632, 638 (4th Cir. 2015). In so holding, the Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, it emphasized that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Because the ALJ failed to explain why the plaintiff's

"moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.* Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide a sufficient explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs v. Colvin*, 2015 WL 2250890, at *5; *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015).

The *Mascio* determination is distinguishable from the facts presented in this matter. ALJ Miller's decision thoroughly discussed the evidence of record, including Jones's mental health conditions. Although he found that she had moderate limitations in concentration, persistence, or pace, ALJ Miller explained why Jones's moderate limitation in this functional area did not more greatly restrict her ability to work. He noted that Jones discontinued treatment at Vidant Behavioral Health in June 2012 and did not seek further mental health treatment until her psychological consultative examination two years later. Tr. at 27. Additionally, mental health treatment notes reflect a depressed mood but also found that Jones was fully alert and oriented with normal motor activity, speech, thought processes, memory, and attention. *Id.* Jones generally reported stabilization of her manic symptoms and improvement of her depressive symptoms, with some ongoing issues. *Id.* Mental status examination results consistently showed the she was fully alert and oriented with intact memory and fair concentration. *Id.* ALJ Miller concluded that although the evidence of record indicated that Jones had symptoms that caused some limitations, these are not so severe as to preclude all work activity. *Id.* at 29.

The RFC reflected Jones's difficulties in her mental functioning by restricting her to simple, routine, repetitive tasks which require her to concentrate only for two-hour increments

with normal rest breaks, only occasional interactions with the public, and provides that jobs do not require complex decision making, constant change, or dealing with crisis situations. *Id.* at 24. Courts have found these limitations to be sufficient to reflect a moderate limitation in concentration, persistence, or pace found at step three and are consistent with *Mascio*. *See, e.g., Lee v. Colvin*, No. 5:15-cv-142-D, 2016 WL 816784, at *2 (E.D.N.C. Feb. 29, 2016) (limitation to simple, routine, repetitive tasks and occasional interactions with co-workers and supervisors but no sustained interaction with the general public comports with *Mascio*); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (finding limitation to "performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounts for difficulties with concentration and persistence); *Linares v. Colvin*, No. 5:14–cv–120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks as well as a stable work environment at nonproduction pace with only occasional public contact). Accordingly, *Mascio* does not require remand in this instance.

In sum, the longitudinal record undermines Jones's assertion that she is more restricted in her functioning than the RFC determined. Jones has failed to show that additional restrictions were well-supported but omitted from the RFC. Although her statements alleged further limitations, ALJ Miller concluded that she was not fully credible. As that finding is supported by substantial evidence and due deference from the court, the present argument must be rejected.

### F.     Listings 12.04 and 12.06

Jones next contends that ALJ Miller erred by failing to find that her impairments met the criteria for Listings 12.04 and 12.06.[4] The Commissioner maintains that ALJ Miller properly

---

[4] ALJ Miller evaluated Jones's impairments under Listings 12.02 (organic mental disorders) and 12.04 (affective disorders), but did not consider 12.06 (anxiety-related disorders). Tr. at 22–23.

concluded that Jones failed to meet the criteria for either of these Listings. The court finds that ALJ Miller did not err in declining to find that Jones satisified the criteria of Listings 12.04 or 12.06.

### 1. Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the Listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. *Id.* § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010)

("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

### 2. Listings 12.04 and 12.06

ALJ Miller found that Jones's impairments did not meet or medically equal Listing 12.04 (Affective Disorders) concluding that she did not establish the required criteria for this Listing. Tr. at 22–23.[5,6] He did not evaluate her impairments under Listing 12.06. Given the similar criteria of these two Listing, the undersigned will address then together.

A claimant meets or medically equals Listing 12.04 or Listing 12.06 if she exhibits the criteria in Paragraph A and either Paragraph B criteria or the Paragraph C criteria. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.06. ALJ Miller concluded that Jones did not meet the Paragraph B criteria or the Paragraph C criteria of Listing 12.04, but he did not address whether the Paragraph A criteria were established. *Id*.

### a. Paragraph A Criteria

Paragraph A of Listing 12.04 requires medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:  anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with

---

[5] The Listing of Impairments was amended as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). However, because 81 Fed. Reg. 66138-01 clearly states that the Social Security Administration does not intend for the court to apply the revised Listings retroactively in evaluating final agency decisions rendered prior to January 17, 2017, the court will analyze this case as the applicable Listings were still in effect. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). The court notes that these Listings now refer to depressive, bipolar, and related disorders (12.04) and anxiety and obsessive-compulsive disorders (12.06).

[6] He also evaluated her impairments under Listing 12.02 (organic mental disorders). Tr. at 25–27. This Listing now considers neurocognitive disorders.

change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; or hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following: hyperactivity; pressure of speech; flight of ideas; inflated self-esteem; or decreased need for sleep; easy distractibility; involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes.

20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04. The record reflects reports of anhedonia, sleep disturbance, psychomotor agitation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating, and  paranoid thinking. It also notes that Jones reported or displayed pressured speech, overconfidence, and easy distractibility. Moreover, her providers have assessed Jones with bipolar disorder, depression, and mania.  Given this evidence, which the Commissioner does not dispute, the record could arguably support a finding that Jones meet the 12.04's Paragraph A criteria.

Paragraph A of Listing 12.06 requires medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: motor tension; autonomic hyperactivity; apprehensive expectation; or vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.06.

Jones contends that she has a history of severe anxiety that Paragraph A of Listing 12.06. The Commissioner contends that the evidence of an anxiety disorder is scant. Whether Jones has anxiety that is accompanied by "motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning" is not apparent from the record.

"The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith*, 99 F.3d at 638; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (ALJ, not the court, has the responsibility to make findings of fact and resolve evidentiary conflicts). The court need not resolve this issue or make a finding on the presence of evidence, or lack thereof, to satisfy the criteria of Paragraph A of these Listing because it concludes that substantial evidence supports ALJ Miller's findings that Jones's impairments do not meet the criteria for either Paragraphs B or C.

### b. Paragraph B Criteria

The Paragraph B criteria for Listing 12.04 and 12.06 require a claimant to have at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social function; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04. "In order to satisfy paragraph B, a claimant must exhibit either marked limitations in two of the first three areas, or marked limitation in one of the first three

areas with repeated episodes of decompensation." *Hodge v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-14-3619, 2015 WL 5813999, at *2 (D. Md. Sept. 29, 2015).[7]

The ALJ employs rates a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

ALJ Miller concluded that Jones had mild restriction in activities of daily living Tr. at 22. In so finding, ALJ Miller noted that although Jones alleged difficulty performing personal grooming tasks, she attributed this to pain, not psychological symptoms. *Id.* Jones reported that she ran errands for the woman she lived with and occasionally took her places; she attended church; she read the Bible and wrote poetry; and she cleaned for her church. *Id.*

ALJ Miller also concluded that Jones had moderate difficulties in social functioning, noting that although she characterized herself as a loner, Jones shops, attends church twice a month, and did not report difficulty getting along with others. *Id.* at 23. While Jones presented with pressured speech and racing thoughts to one examiner, she later settled down and was found to be cooperative. *Id.*

In the functional area of maintaining concentration, persistence, or pace, ALJ Miller found that Jones had moderate limitations. *Id.* He noted one examiner found she would have

---

[7] Jones does not contend that she has experienced repeated, extended episodes of decompensation, nor does the record support such a finding. Accordingly, the undersigned addresses only the first three functional categories.

difficulty following instructions and paying attention because her mind jumps from one thing to another. *Id*. However, Jones also stated that she does not need reminders to take medication, go places, or attend to her personal grooming tasks. *Id*. Although mental status exam findings indicated attention and concentration problems, they were not to the degree Jones alleged. *Id*.

ALJ Miller also found that Jones had no extended episodes of decompensation. *Id*.

Jones asserts, in conclusory fashion, that she satisfies Paragraph B. With respect to activities of daily living, she asserts that she lives near family members who assist her when she needs help. She maintains she is more limited in social functioning because she gets nervous around other people and cannot stop talking. She also testified that she has memory problems, difficulty completing tasks because she often forgets what she is doing, and sometimes experiences blackouts with no memory of what occurred. Jones maintains that her testimony, coupled with Dr. Bing's limitations, are sufficiently severe so as to qualify as a "marked" limitations under Paragraph B.

Despite these arguments, Jones has failed to present evidence that her restrictions in these functional areas can be characterized as "marked" so as to satisfy Paragraph B. The record reflects, and ALJ Miller found, that while Jones's mental impairments caused some limitations, as evidenced in both his step two finding and his RFC determination, she was not as restricted as she alleged. As noted, she ran errands for the woman she lived with and occasionally took her places, shopped, read the Bible, wrote poetry, and she cleaned for her church. *Id*. Jones attends church twice a month and did not report difficulty getting along with others. *Id*. at 23. While Jones may have difficulty with following instructions and paying attention, she does not need reminders to take medication, go places, or attend to her personal grooming tasks. This constitutes substantial evidence supporting ALJ Miller's conclusions that Jones had no more than

mild restrictions in activities of daily living and no more than moderate difficulties in social

functioning and concentration, persistence, or pace.

In sum, substantial evidence supports ALJ Miller's determination that Jones has no more

than mild limitations in activities of daily living and no more than moderate difficulties in social

functioning or in maintaining concentration, persistence, or pace. There is no evidence

supporting a finding that Jones has experienced repeated episodes of extended decompensation.

As Jones failed to demonstrate she is more severely limited in these functional areas, ALJ Miller

did not err by concluding that she did not meet the Paragraph B criteria for 12.00 Listings. *See*

*Smith*, 99 F.3d at 638 ("We must sustain the ALJ's decision, even if we disagree with it,

provided the determination is supported by substantial evidence and thus, would be enough to

justify a refusal to direct a verdict in a jury trial."). As such, Jones's argument on this issue lacks

merit.

### c.      Paragraph C Criteria

Jones does not argue that her impairments satisfy the Paragraph C criteria of either

Listing 12.04 or 12.06. Nonetheless, the undersigned funds that Jones failed to establish the

presence of the Paragraph C factors.

Although Listings 12.04 and 12.06 have the same Paragraph B criteria, they have

different Paragraph C criteria. In order to meet the Paragraph C criteria for Listing 12.04, the

claimant must have a "[m]edically documented history of a chronic affective disorder of at least

[two] years' duration that has caused more than a minimal limitation of ability to do basic work

activities, with symptoms or signs currently attenuated by medication or psychosocial support,"

along with either (1) repeated episodes of decompensation, each of extended duration; (2) a

residual disease process that has resulted in such marginal adjustment that even a minimal

increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. In order to meet the Paragraph C criteria for Listing 12.06, the claimant must be completely unable to function independently outside of his home. *Id.* § 12.06.

ALJ Miller concluded that Jones did not meet the Paragraph C criteria for Listing 12.04. Tr. at 23. This conclusion is supported by substantial evidence in the record. As already explained, there is no evidence showing that Jones experienced repeated and extended episodes of decompensation. Similarly, there is no evidence showing that she is incapable of functioning outside of her home, that she requires a highly supportive living arrangement, or that she has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate.

Accordingly, ALJ Miller did not err when he concluded that Jones did not meet or medically equal Listing 12.04. Nor has Jones established that she meets the criteria of Listing 12.06. Accordingly, her argument on this issue lacks merit.

## III.    Conclusion

For the forgoing reasons, the court recommends that the court deny Jones's Motion for Judgment on the Pleadings (D.E. 16), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 21), and affirm the Commissioner's determination.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: August 8, 2017

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE